# IN THE SUPREME COURT OF IOWA

No. 22–1920

Submitted March 21, 2024—Filed June 21, 2024

**STATE OF IOWA,**

Appellee,

vs.

**SHANNON PAIGE HIGHTOWER,**

Appellant.

Appeal from the Iowa District Court for Black Hawk County, Linda Fangman, Judge.

Shannon Hightower appeals her guilty plea, her sentence, and the conditions ordered for her appeal bond. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

May, J., delivered the opinion of the court, in which Waterman, Mansfield, McDonald, and Oxley, JJ., joined. McDermott, J., filed a dissenting opinion, in which Christensen, C.J., joined.

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellee.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

**MAY, Justice.**

Shannon Hightower pleaded guilty to dependent adult abuse and theft in the second degree. On appeal, Hightower contends that there were defects in her guilty plea, her sentencing, and the conditions set for her appeal bond.

As part of her challenge to her guilty plea, Hightower argues that Iowa Code section 814.29 (2021) is unconstitutional. Section 814.29 regulates judicial review of "challenges [to] a guilty plea based on an alleged defect in the plea proceedings." *Id.* It prohibits courts from vacating a plea "unless the defendant demonstrates that the defendant more likely than not would not have pled guilty if the [alleged] defect had not occurred." *Id.* Hightower argues that this prohibition violates due process and the separation-of-powers doctrine.

We reject Hightower's challenges to section 814.29. And we conclude that Hightower has not satisfied section 814.29's requirements by demonstrating that she "would not have pled guilty if the [alleged] defect[s] had not occurred." *Id.* So, although we agree with Hightower that her plea was defective, section 814.29 prohibits us from vacating her plea.

On the other hand, we agree with Hightower that resentencing is required because the district court relied on an improper sentencing factor. And we agree with Hightower that the district court erred by ordering unauthorized forfeiture requirements for Hightower's appeal bond.

In short, we affirm Hightower's conviction, we vacate her sentence, and we reverse the forfeiture requirements. We remand for resentencing and for lawful disbursement of funds paid for Hightower's release during this appeal.

## I. Background.

In 2020, the State charged Hightower with dependent adult abuse and theft in the second degree, both class "D" felonies. The minutes of testimony showed that Hightower had power of attorney over J.S., a dependent adult.

According to the minutes, Hightower misused J.S.'s money, opened new credit cards in J.S.'s name, and misused those cards. J.S. claims that Hightower caused losses of more than $16,000.

Initially, Hightower pleaded not guilty. But two years later, in January 2022, Hightower signed and filed a "Written Guilty Plea and Waiver of Rights," referred to here as the "guilty plea." Through the guilty plea, Hightower pleaded guilty as charged to dependent adult abuse and theft in the second degree. The guilty plea said this about the "plea agreement" between the State and Hightower: "State will follow [the presentence investigation report] or recommend suspended sentence, 5 years concurrent, Defendant may apply to transfer probation to different jurisdiction, and this matter includes charges known on all matters related to [J.S.] an[d] restitution to be determined." This explanation of the plea agreement was initialed by both Hightower and an assistant county attorney.

After Hightower filed the guilty plea, the district court entered an order finding Hightower guilty based on her plea. The same order set sentencing and ordered preparation of a presentence investigation report (PSI).

After multiple continuances, a sentencing hearing was held on November 17, 2022. The State argued that the court should follow the PSI's recommendation of a suspended sentence. Hightower's counsel argued for a deferred judgment.

The court sentenced Hightower to concurrent prison terms. The court gave a thorough statement of its reasons for the sentence. Important for this appeal, one of the court's reasons was Hightower's failure to pay restitution prior to sentencing.

After the court pronounced sentence and advised Hightower of her appeal rights, Hightower's attorney asked the court to withhold mittimus, i.e., to

postpone ordering Hightower into custody. And Hightower personally addressed the court about this topic. She claimed that she "was under the assumption" that the plea agreement required probation. She claimed that she had no expectation of going into custody. And so, Hightower claimed, she had made no plans for the care of her children. Hightower asked for additional time to make those arrangements.

The court expressed reservations about withholding mittimus. Ultimately, though, the court gave Hightower until 6:00 p.m. the next day to turn herself in.

The next day, November 18, Hightower filed a motion asking the court to order "a stay of the sentence" and to set a hearing to review concerns about her guilty plea. Alternatively, Hightower asked the court to set an appropriate appeal bond.

On November 21, Hightower filed a notice of appeal. Later that day, the court entered an order denying Hightower's request for a hearing about her guilty plea. In the same order, the court set an appeal bond in the amount of $17,000 cash only. The order also said this:

> All parties are advised any appeal bond posted, regardless of who posts it, SHALL be used to satisfy victim restitution. The Clerk of Court shall notify any person posting the appeal bond that it will not be returned, but rather will be used for victim restitution.

Later, Hightower filed a separate notice of appeal from the order "setting the appeal bond and eventual forfeiture of the bond for victim restitution." We consolidated the two appeals into this one case, which we retained.

**II. Issues Presented.**

Hightower's brief presents five substantive issues for our review:

1.  Hightower contends that we should reverse her conviction because her guilty plea was defective.

2.     Hightower contends that the district court erred in failing to offer Hightower an opportunity to withdraw her plea during the sentencing hearing.

3.     Hightower contends that the district court relied on an improper sentencing consideration.

4.     Hightower contends that the district court abused its discretion by setting her appeal bond at $17,000 cash only.

5.     Hightower contends that the district court erred by ordering forfeiture of her appeal bond to pay victim restitution.

We address each of these issues below. Before reaching these substantive issues, though, we first address our appellate jurisdiction.

**III. Appellate Jurisdiction.**

The right to appeal is statutory. *State v. Loye*, 670 N.W.2d 141, 147 (Iowa 2003); *see also Johnson v. Iowa State Highway Comm'n*, 134 N.W.2d 916, 917 (Iowa 1965). "Unless an appeal" is authorized by statute, "this court is without jurisdiction" to hear the appeal, and we "must dismiss" the appeal. *Ontjes v. McNider*, 275 N.W. 328, 339 (Iowa 1937); *accord State v. Tucker*, 959 N.W.2d 140, 149 (Iowa 2021) ("It is our duty to reject an appeal not authorized by statute." (quoting *Crowe v. De Soto Consol. Sch. Dist.*, 66 N.W.2d 859, 860 (Iowa 1954))).

In criminal cases, the statute that authorizes appeals by a defendant is Iowa Code section 814.6(1). It states:

1. Right of appeal is granted the defendant from:

*a.* A final judgment of sentence, except in the following cases:

(1) A simple misdemeanor conviction.

(2) An ordinance violation.

      (3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

*Id.*

Subsection 814.6(1)(*a*)(3) sets a general rule that there is no right of appeal from "[a] conviction where the defendant has pled guilty." *Id.* § 814.6(1)(*a*)(3). It also specifies two exceptions: one for "a guilty plea for a class 'A' felony" and another for "a case where the defendant establishes good cause." *Id.* If either exception applies, the defendant has a right to appeal.

Because Hightower's case does not involve a "class 'A' felony," the first exception cannot apply. *Id.* So Hightower must rely on the second exception, which requires a showing of "good cause." *Id.* We have held that "good cause" exists when a defendant challenges "a sentence that was neither mandatory nor agreed to." *State v. Wilbourn*, 974 N.W.2d 58, 66 (Iowa 2022) (quoting *State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020)). And Hightower's appeal includes a challenge to her prison sentence. That prison sentence was neither mandatory nor agreed upon. So good cause exists. *See id.* And we have jurisdiction to decide all substantive issues raised by Hightower's appeal. *State v. Rutherford*, 997 N.W.2d 142, 146 (Iowa 2023) ("Once good cause is established . . . as to one issue, we have *jurisdiction* over the entire appeal . . . ."); *Wilbourn*, 974 N.W.2d at 66 ("An appellate court either has jurisdiction over a criminal appeal or it does not."). We proceed to those substantive issues now.

**IV. Substantive Issues.**

**A. The Guilty Plea.** Hightower's central argument is her attack on her plea of guilty. As noted, Hightower offered her plea through a written request to plead guilty ("guilty plea" or "plea"). Hightower argues that the guilty plea contains numerous errors and ambiguities. And so, Hightower argues, we should vacate the plea and remand for trial.

But as Hightower acknowledges, there are additional hurdles that she would need to pass before we could vacate her plea. First, Hightower acknowledges the general rule that we do not even review alleged plea defects on direct appeal where—as here—the defendant did not timely file a motion in arrest of judgment in the district court. Iowa R. Crim. P. 2.24(3)(*a*)(2) ("A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal."). Second, Hightower also acknowledges that even if we were to conclude that her plea was defective, section 814.29 limits the circumstances in which we can vacate pleas. As will be explained, though, Hightower believes that both of these hurdles can be overcome.

We address each of Hightower's arguments below. First, we consider Hightower's arguments about the motion-in-arrest-of-judgment issue. Then, we consider Hightower's attacks on the guilty plea itself. Finally, we consider Hightower's arguments about section 814.29.

1. *The motion-in-arrest-of-judgment issue.* As a general rule, a defendant who wishes to challenge a guilty plea on appeal must first raise the challenge in the district court by filing a timely motion in arrest of judgment. *See id.* Failure to timely file a motion in arrest of judgment in the district court usually precludes appellate review of alleged plea defects. *Id.*; *see also Rutherford*, 997 N.W.2d at 146 (noting the rule "requires a defendant to file a motion in arrest of judgment and bars a defendant from appealing issues the defendant should have, but did not, raise through that motion"). This rule serves an important purpose: it allows "the district court to correct defects in guilty plea proceedings before an appeal and therefore eliminate[s] the necessity for the appeal." *State v. Hanes*, 981 N.W.2d 454, 458 (Iowa 2022) (quoting *State v. Gant*, 597 N.W.2d 501, 504 (Iowa 1999)).

But there is an exception to the rule. *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021). The rule does not apply unless the defendant was advised "during the plea proceedings, as required by rule 2.8(2)(*d*), that challenges to the plea must be made in a motion in arrest of judgment *and that the failure to challenge the plea by filing the motion within the time provided prior to sentencing precludes a right to assert the challenge on appeal.*" *State v. Fisher*, 877 N.W.2d 676, 680 (Iowa 2016) (quoting *State v. Meron*, 675 N.W.2d 537, 540 (Iowa 2004)).

In this case, Hightower filed no motion in arrest of judgment. But Hightower claims she was excused from filing a motion because she did not receive an adequate advisory about her obligation to file a motion and the consequences of failing to do so. Here is the advisory that Hightower received:

> 24. I understand that if I wish to challenge this plea of guilty, I must do so by filing a Motion in Arrest of Judgment at least five (5) days prior to the Court imposing sentence, but no more than 45 days from today's date. I understand that by asking the Court to impose sentence immediately that I waive my right to challenge the plea of guilty which I have hereby entered. **Initials** <u>SH</u>

> 25. I understand that I have the right to the preparation of a pre-sentence investigation report for a felony offense that is not a class A felony and a delay of at least 15 days between the date this plea is entered and the date of sentencing. I understand that if I am sentenced immediately, I lose my right to challenge any defect in this plea or plea proceeding by motion in arrest of judgment and appeal to a higher court, as well as my right to have a judge rely on a pre-sentence investigation report. Knowing the above, ☐ I ask the court to sentence me immediately. ☒ I ask the court to sentence me at a later date and for the court to order a pre-sentence investigation report. **Initials** <u>SH</u>

We agree with Hightower that this advisory was not adequate. It is true that the advisory informed Hightower that *if* she were "sentenced immediately," she would lose the "right to challenge" plea defects "by motion in arrest of judgment and appeal to a higher court." But Hightower did not request or receive immediate sentencing. There were many months between her plea and

sentencing. So, unlike defendants who request and receive immediate sentencing, Hightower had the opportunity to file a motion in arrest of judgment. Specifically, Hightower had the opportunity to file a motion "at least five (5) days prior to the Court imposing sentence, but no more than 45 days from" the date of the plea. But the advisory did not explain the consequences of failing to capitalize on that opportunity. The advisory did not explain what would happen if Hightower did not timely file a motion. The advisory did not explain that failure to timely file the motion would result in forfeiture of Hightower's appeal rights. And so the advisory was not sufficient. *Fisher*, 877 N.W.2d at 680–81. Because the advisory was not sufficient, it did not preclude appellate review of Hightower's challenges to her plea.

Before addressing those challenges, though, we add a clarification about our approach to motion-in-arrest-of-judgment advisories. The State suggests that our opinion in *State v. Damme* changed our approach to those advisories. *See* 944 N.W.2d at 107. We wish to clarify that our approach has not changed.

It is true that, in *Damme*, we approved an advisory that did not expressly state that failure to timely file a motion would preclude a plea challenge on appeal. *Id.* at 108. In *Damme*, though, the defendant was "not seeking to vacate her guilty plea." *Id.* at 107. And so *Damme*'s comments about the advisory could be properly viewed as dicta.

In any event, we now reaffirm that a proper advisory *must* advise the defendant that "the failure to challenge the plea by filing the motion within the time provided prior to sentencing precludes a right to assert the challenge on appeal." *Fisher*, 877 N.W.2d at 680 (emphasis omitted) (quoting *Meron*, 675 N.W.2d at 540). If this warning is not included in the advisory, the defendant's failure to timely file a motion will not preclude a plea challenge on appeal. To

whatever extent *Damme* can be read to support a different view, we correct course.

2. *The plea itself.* We turn next to Hightower's substantive argument that her guilty plea was defective. On this point, we agree with Hightower.

Rule 2.8(2)(*b*) requires the district court to "*not* accept a guilty plea" unless and until several specified tasks are fulfilled. Iowa R. Crim. P. 2.8(2)(*b*) (emphasis added); *see also Meron*, 675 N.W.2d at 542 ("Substantial compliance [with rule 2.8(2)(*b*)] is required."). Those tasks include establishing "that the plea is made voluntarily and intelligently." Iowa R. Crim. P. 2.8(2)(*b*). Those tasks also include informing the defendant of several key aspects of the guilty plea and its consequences. *Id.* Those key aspects include, among others, the maximum punishments for the offense to which the defendant is pleading guilty. *Id.*

In this case, Hightower raises several concerns about her guilty plea. For purposes of analysis, we divide those concerns into two groups. On one hand, Hightower points to several "irregularities" in the written guilty plea form "that raise questions of whether Hightower knowingly and intelligently pled guilty." These "irregularities" include Hightower's concerns that: (1) the guilty plea suggested that Hightower may not have been seeking a deferred judgment although the record shows she was; (2) the plea overstated the civil penalty that Hightower would be assessed in the event of a deferred judgment; (3) the plea was ambiguous as to whether she was entering an Alford plea or, instead, admitting her actual guilt; (4) the plea did not accurately state the factual basis for her plea to theft in the second degree; (5) the plea erroneously suggested that Hightower would be subject to a law enforcement initiative surcharge; and more.

We acknowledge Hightower's concerns. On the present record, though, we cannot conclude that these irregularities show that the guilty plea was not

entered voluntarily and intelligently. We consider the issue preserved pending further development through a postconviction-relief (PCR) action.

We turn now to Hightower's separate concern about the guilty plea's advisory about maximum punishments. Rule 2.8(2)(*b*) is clear that before a guilty plea can be accepted, the defendant must be advised of the maximum punishments for the offenses to which the defendant is pleading guilty. *Id.* This rule applies equally to monetary punishments such as fines. *See State v. Brady*, 442 N.W.2d 57, 59 (Iowa 1989) (quoting *Punishment, Black's Law Dictionary* 1110 (5th ed. 1979) for the proposition that a "fine" is a form of punishment). So if a defendant is not advised of the maximum fine for the offenses to which the defendant is pleading guilty, the plea is not valid.

That is what happened here. Hightower pleaded guilty to two class "D" felonies. At the time of her offenses, the Iowa Code required "a fine of at least seven hundred fifty dollars but not more than seven thousand five hundred dollars" for each class "D" felony conviction. Iowa Code § 902.9(1)(*e*) (2019). But the guilty plea that Hightower signed did not convey this information. While the guilty plea accurately stated that each minimum fine was "$750," it did not accurately state the *maximum* fine. Instead, it inaccurately stated that the maximum fine was "not more than 0." For context, here is an excerpt:

> 11. I know that the maximum sentence for each charge for which I am pleading guilty as provided by statute is confinement in the jail/prison for a period of not more than __**five years**__ year(s) and fine(s) of not more than ___0___. Minimum fine(s) of ___~~1,000.00~~ $750___.

Because Hightower's guilty plea said that the maximum possible fine was "0" even though the actual maximum possible fine was $7,500 for each charge, the plea failed to substantially comply with rule 2.8(2)(*b*).

Traditionally, this conclusion would have required us to vacate Hightower's plea. *See, e.g., State v. Weitzel*, 905 N.W.2d 397, 408 (Iowa 2017). As explained, though, section 814.29 now limits the circumstances in which we can vacate pleas. So the next logical step is to consider whether section 814.29 prohibits us from vacating Hightower's plea.

Before reaching that issue, however, we offer a general comment about written pleas. We believe that our rules governing written pleas generally provide both fairness and efficiency in the plea process. Even so, the concerns raised by Hightower serve as a reminder of the need for careful review of written pleas. If that review raises concerns in the mind of the plea judge, the judge certainly has authority to require a personal colloquy before accepting or rejecting a plea.

3. *Section 814.29.* We now turn to section 814.29, which provides in relevant part:

> If a defendant challenges a guilty plea based on an alleged defect in the plea proceedings, the plea shall not be vacated unless the defendant demonstrates that the defendant more likely than not would not have pled guilty if the defect had not occurred. The burden applies whether the challenge is made through a motion in arrest of judgment or on appeal. Any provision in the Iowa rules of criminal procedure that are inconsistent with this section shall have no legal effect.

Iowa Code § 814.29 (2021).

Hightower offers three reasons why section 814.29 does not prohibit us from vacating her plea. First, Hightower contends that the current record shows that she "more likely than not would not have pled guilty if the defect had not occurred." *Id.* Therefore, by its terms, section 814.29 doesn't prohibit us from vacating Hightower's plea. Second, and alternatively, Hightower suggests that section 814.29 simply doesn't apply where, as here, the defendant received an inadequate motion in arrest of judgment advisory. Finally, and again

alternatively, Hightower raises constitutional challenges to section 814.29. We address each argument in turn.

a. *Does the present record satisfy section 814.29?* Hightower first argues that she has satisfied section 814.29 by "demonstrat[ing] that" she "more likely than not would not have pled guilty if the defect" in her guilty plea "had not occurred." *Id.* As support, Hightower points to comments that she made at the sentencing hearing. The transcript from that hearing shows that after the court announced Hightower's prison sentence and advised Hightower of her appeal rights, the court asked if any further record needed to be made. At this point, Hightower's attorney asked the court if it would be "possible to delay the execution of the mittimus so she can take care of her children?" The court expressed reluctance. Hightower herself then asked the court if she could "just have one day, please?" Hightower went on to explain that because she believed there was "an agreement" that she would receive a suspended sentence and probation, she had not come to court prepared for immediate incarceration. Specifically, Hightower explained, she had not made arrangements for the care of her children.

On appeal, Hightower claims that her postsentencing statements demonstrate that she "would not have pled guilty" if she had understood that her guilty plea did not guarantee probation. *Id.* We disagree. To begin with, on the present record, we see no grounds for uncertainty as to whether the written guilty plea guaranteed probation. It did not. The written plea does not say that probation was guaranteed. Indeed, as will be discussed more in the context of Hightower's rule 2.10(2) argument, the written plea did not even require the State to argue for probation. If the PSI had recommended prison, nothing would have prevented the State from agreeing.

That aside, we do not believe that Hightower's comments at sentencing were sufficient to fulfill the requirements of section 814.29. Nothing in her comments suggested that she wanted to go to trial instead of pleading guilty. Her comments did not touch on the notion of going to trial.[1] Nor did she say that she wanted to withdraw her guilty plea. Nor did she say that she wished that she hadn't pleaded guilty in the first place. At most, her comments suggested that she misunderstood *what benefit* she had obtained by pleading guilty. That is not enough to show that she would not have pleaded guilty if she had fully understood the situation. Indeed, based on this record, it appears quite plausible that she *would have* still pleaded guilty even knowing that prison was possible. She just would have planned differently.

In any event, based on the current record, we cannot say that the requirements of section 814.29 are satisfied.

b. *But does section 814.29 even apply?* We now turn to Hightower's alternative argument that section 814.29 does not apply here because Hightower did not receive an adequate motion-in-arrest-of-judgment advisory (motion advisory) as part of her guilty plea. We disagree.

To find the meaning of section 814.29, we must focus on its text, the words chosen by the legislature. The words of section 814.29 offer no support to Hightower's argument. *See id.* Its words include *no* requirement that the district court make *any* advisory about motions or anything else. *See id.* Nor do its words require appellate courts to consider whether a motion advisory was given. *See id.* Motion advisories are not among the matters covered by section 814.29. *See*

---

[1]Although Iowa Code section 814.29 expressly requires a showing that the defendant "would not have pled guilty," it does not expressly mention going to trial. Usually, though, going to trial is fairly implied by "not . . . ple[a]d[ing] guilty." *Id.*; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("Nothing is to be added to what the text states *or reasonably implies* . . . ." (emphasis added)).

*id.*; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it.")

Even so, Hightower suggests that due process concerns preclude us from giving section 814.29 effect when, as here, an inadequate motion advisory was given. This is true, Hightower argues, because the lack of an adequate motion advisory prevented her from making a record that she "would not have pled guilty" but for defects in the plea proceeding. Iowa Code § 814.29. In other words, the lack of an adequate motion advisory prevented her from making a record that would satisfy section 814.29's requirements. This violated her due process rights, Hightower claims.

We disagree. Of course, due process is guaranteed by both the Iowa Constitution and the United States Constitution. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9. Due process is usually satisfied by "notice and an opportunity to be heard." *Stogdill v. City of Windsor Heights*, 991 N.W.2d 719, 730 (Iowa 2023) (quoting *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 566 (Iowa 2019)).

Hightower received due process as to the requirements of Iowa Code section 814.29. She had both notice and an opportunity to be heard. As for notice, "[a]ll persons are presumed to know the law." Iowa Code § 701.6; *see also Millwright v. Romer*, 322 N.W.2d 30, 33 (Iowa 1982) (en banc) (collecting cases for the proposition that "[e]very citizen is assumed to know the law and is charged with knowledge of the provisions of statutes"). So we presume Hightower and her learned attorney knew about section 814.29 and its requirements. *See Presbytery of Se. Iowa v. Harris*, 226 N.W.2d 232, 242 (Iowa 1975) (en banc) (rejecting due process challenge to statute and concluding that "enactments of our state legislature and publication thereof constitute adequate notification to

all concerned as to what they contain"); *cf. United States v. Howell*, No. CR07–2013–MWB, 2008 WL 313200, at *8 (N.D. Iowa Feb. 1, 2008) (rejecting due process challenge to sex offender registry requirements; noting "Defendant is presumed to know the law" (quoting *United States v. Sax*, 39 F.3d 1380, 1390 (7th Cir. 1994), *overruled on other grounds by United States v. Cabrales*, 524 U.S. 1 (1998))).

As for opportunity to be heard, Hightower had multiple chances to make any record that she wanted to make. For instance, Hightower's sentencing hearing was held in open court before a court reporter. At the beginning of the sentencing hearing, the court asked counsel if there was "any legal reason why sentencing cannot . . . proceed" or if the defense had any evidence to present. Later, but still prior to sentencing, Hightower was given another opportunity to address the court. Then, after the sentence was entered, Hightower and her counsel were again permitted to address the court regarding the issuance of mittimus. Then, on the day after sentencing, Hightower filed a motion that raised concerns about the guilty plea.

By our count, then, Hightower had at least four chances to make a record that might satisfy section 814.29. Three of those opportunities occurred in open court with the benefit of a court reporter. Hightower had ample opportunities to be heard. This satisfied due process.

c. *Is section 814.29 unconstitutional on its face?* We turn now to Hightower's broader constitutional challenges to section 814.29. She claims that the statute is facially invalid on two grounds: due process violations and separation-of-powers violations. Both of Hightower's challenges focus on the limitations that section 814.29 imposes on appellate review. We address each challenge in turn.

i. *Due process challenge.* We start with Hightower's facial due process challenge. Hightower claims that section 814.29 offends due process by preventing appellate review of guilty plea challenges unless the defendant can show that she "would not have pled guilty" if the alleged plea defects "had not occurred." Iowa Code § 814.29. We reject this challenge.

At the outset, we would clarify that section 814.29 does not actually *prevent* appellate review of Hightower's guilty plea challenges. *See id.* Indeed, as demonstrated, we have considered both Hightower's motion-in-arrest-of-judgment arguments and Hightower's arguments about the guilty plea itself. Section 814.29 does not prohibit these inquiries. Rather, section 814.29 only limits our review by restricting the *remedies* we can provide to Hightower. Section 814.29 only prevents us from vacating Hightower's plea if (as here) its requirements are not met. *See id.* Of course, we realize that this subtle difference may not matter much to Hightower. All the same, because Hightower is challenging the constitutionality of section 814.29, we want to be clear about what section 814.29 actually does.

With that clarification, we turn to Hightower's facial due process challenge. We start with the recognition that facial due process challenges are generally difficult to win. *Kluender v. Plum Grove Invs., Inc.*, 985 N.W.2d 466, 470 (Iowa 2023). The challenger must show that the statute is "unconstitutional *in all its applications.*" *Id.* (quoting *Bonilla v. Iowa Bd. of Parole*, 930 N.W.2d 751, 766 (Iowa 2019)). The challenger must show that the statute is "incapable of *any valid application.*" *Id.* (quoting *Bonilla*, 930 N.W.2d at 766). These showings are rarely easy. And facial challenges are disfavored for many reasons—including the fact that they require the court to speculate about whether there *could be* proper applications under facts that are not before the court. *Id.*

In any event, we reject Hightower's challenge to section 814.29. As mentioned, Hightower contends that section 814.29 violates due process by limiting our appellate review of guilty pleas. But due process doesn't require unfettered appellate review in every case. *See, e.g.*, *Tucker*, 959 N.W.2d at 155–56 (Appel, J., concurring specially). Certainly, due process is not offended by reasonable limitations on appellate review of guilty plea challenges. For instance, in *State v. Hanes*, we rejected the argument that due process allowed a defendant "to challenge his guilty plea on direct appeal without first filing a motion in arrest of judgment in district court." 981 N.W.2d at 461.

*Hanes* relied in part on our opinion in *State v. Treptow*, 960 N.W.2d 98. *See Hanes*, 981 N.W.2d at 459–61. In *Treptow*, we held that the legislature did not violate due process by prohibiting direct appellate review of claims that plea counsel had been ineffective. 960 N.W.2d at 107–08. It was sufficient, we concluded, that the defendant could raise those claims in a separate PCR action. *Id.* at 108. ("Due process merely requires an opportunity to present those claims in some forum.").

Likewise, even if section 814.29 prevents us from vacating Hightower's plea through this direct appeal, she will still have another opportunity to attack her guilty plea on PCR. *See id.* Indeed, a PCR action may offer the best possible forum for those attacks. In a PCR action, Hightower will have a full opportunity to provide testimony and other evidence to show that she would not have pleaded guilty. She will have a full opportunity to be heard, the core due process guarantee. *Accord Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). So we reject Hightower's facial due process challenge.

ii. *Separation of powers challenge.* We turn now to Hightower's separation-of-powers challenge. Hightower contends that "insofar as section 814.29" limits appellate review of alleged defects in a guilty plea proceeding, section 814.29 violates the separation of powers required by our Iowa Constitution. *See* Iowa Const. art. III, § 1. We disagree. In *State v. Tucker,* we rejected a similar separation-of-powers challenge to Iowa Code section 814.6(1)(*a*)(3), a statute that precludes appeals for some defendants who have pleaded guilty. *Tucker*, 959 N.W.2d at 152–53 (majority opinion). We explained,

> The Iowa Constitution provides this court's appellate jurisdiction is subject to such restrictions as the legislature may prescribe. Iowa Const. art. V, § 4. The Iowa Constitution also tasks the legislature with the primary duty to provide for a system of practice in all Iowa Courts. *See id.* § 14. Here, the legislative department determined that defendants who plead guilty to non-class A offenses should not have the right to pursue an appeal without a showing of good cause. . . . These decisions were within the legislative department's prerogative and not in derogation of the judicial power.

*Id.* (citation omitted).

We think *Tucker* largely forecloses Hightower's separation-of-powers challenge. Just as it was appropriate for the legislature to require a showing of good cause by defendants who have pleaded guilty, *id.*, it was also appropriate for the legislature to require a showing that alleged plea defects were sufficiently prejudicial that no plea would have been entered if those defects had not occurred. Both requirements are consistent with the legislature's enumerated powers under article V, sections 4 and 14 of the Iowa Constitution. Neither requirement violates the separation of powers. We reject Hightower's challenge.

4. *Conclusions regarding Hightower's plea.* To summarize, we conclude that Hightower's failure to file a motion in arrest of judgment does not preclude appellate review of her guilty plea. Additionally, we conclude that Hightower has shown a substantial defect in her guilty plea: the absence of an accurate advisory

as to the maximum punishment she faced by pleading guilty. Even so, we conclude that section 814.29 prevents us from vacating Hightower's plea. By way of conscious repetition, however, nothing in this opinion precludes Hightower from pursuing claims related to her guilty plea in a PCR action under Iowa Code chapter 822.

**B. Opportunity to Withdraw Plea.** We next consider Hightower's argument that rule 2.10(3) required the district court to offer Hightower an opportunity to withdraw her plea at the sentencing hearing. Iowa R. Crim. P. 2.10(3). We disagree.

Rule 2.10 governs plea bargaining. Subsection (3) of rule 2.10 deals with a special kind of plea agreement, namely, an agreement that "is conditioned upon the court's approval of a sentencing agreement between the parties." *Id.* When the parties present the court with a plea agreement that "is conditioned upon the court's approval of a sentencing agreement between the parties," the court's choices are restricted. *Id.* The court must either accept the parties' agreement or reject it—although the court may postpone this decision "until receipt of a presentence investigation report." *Id.* If the court accepts the parties' agreement, the court must "inform the defendant that it will adopt the disposition provided for in the agreement or another disposition more favorable to the defendant." *Id.* r. 2.10(3)(*a*). But if, instead, the court "determines it will reject the sentencing agreement, the court shall inform the parties of this fact and afford the defendant an opportunity to withdraw the plea." *Id.* r. 2.10(3)(*b*)(1).

Hightower claims that her plea fell within rule 2.10(3). And Hightower claims that the district court violated the rule because the court neither "follow[ed] the terms" of the parties' sentencing agreement nor "g[a]ve Hightower an opportunity to withdraw her guilty pleas." Because of these violations, Hightower argues, her prison sentence should be vacated.

We disagree. As explained, rule 2.10(3) only applies if the parties have presented a plea agreement that "is conditioned upon the court's approval of a sentencing agreement between the parties." *Id.* r. 2.10(3). But the record does not show that the parties had agreed upon a sentence, much less that the parties asked the court to accept an agreed-upon sentence as a condition of their plea agreement. The written guilty plea does not suggest that the parties agreed upon any specific sentence. While the plea required the State to either follow the PSI's recommendation or advocate for a suspended sentence, that requirement did not commit the State to a specific sentence. If the PSI had recommended prison, the plea agreement didn't prevent the State from seconding that recommendation. Meanwhile, Hightower wasn't bound at all.

This lack of an agreed-upon sentence is reflected in the sentencing hearing transcript as well. The parties did not present an agreed-upon sentence to the court. The State argued that the court should impose a suspended sentence as recommended in the PSI. But the State also argued that it "would not be appropriate to grant a deferred judgment." Then Hightower took the opposite position by requesting a deferred judgment. The parties didn't agree.

Because the parties had not agreed upon a sentence, rule 2.10(3) did not apply, and the court was not obligated to "afford the defendant an opportunity to withdraw the plea." *Id.* r. 2.10(3)(*b*)(1); *see, e.g.*, *State v. Kessler*, No. 22–1388, 2023 WL 3088308, at *2 n.1 (Iowa Ct. App. Apr. 26, 2023) ("[A] rule 2.10 plea agreement requires a joint recommendation."). We reject Hightower's rule 2.10(3) argument. And so we need not consider whether section 814.29 would prohibit us from granting relief to Hightower *if* she had presented a meritorious rule 2.10(3) argument (she did not).[2]

---

[2]One procedural point: In October 2022, rule 2.10 was revised, effective July 1, 2023. Because Hightower's appellate arguments appear to rely on language from the revised version of

**C. Improper Sentencing Factor.** Next we consider Hightower's argument that the court relied on an improper sentencing factor. On this issue, we agree with Hightower.

When the district court imposes a sentence that falls "within the statutory limits," the court's decision "to impose a particular sentence . . . is cloaked with a strong presumption in its favor." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). The discretion afforded to the sentencing court is necessarily broad. *Id.* As we explained in *State v. Formaro*:

> Judicial discretion imparts the power to act within legal parameters according to the dictates of a judge's own conscience, uncontrolled by the judgment of others. It is essential to judging because judicial decisions frequently are not colored in black and white. Instead, they deal in differing shades of gray, and discretion is needed to give the necessary latitude to the decision-making process. This inherent latitude in the process properly limits our review. Thus, our task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds.

*Id.* at 725 (citations omitted).

Even so, if the sentencing court "uses any improper consideration, resentencing . . . is required." *State v. Boldon*, 954 N.W.2d 62, 73 (Iowa 2021) (quoting *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (en banc)). This is true even if the improper factor was only a "secondary consideration." *State v. Goble*, 4 N.W.3d 700, 704 (Iowa 2024) (quoting *Boldon*, 954 N.W.2d at 73). But

---

rule 2.10, we have applied the revised version here. We note, though, that because Hightower's plea and sentencing occurred before the revision became effective, the prerevision version of rule 2.10 is likely the more appropriate fit. Regardless, we do not believe that application of the prior version of rule 2.10 would lead to a different outcome. *See* Iowa R. Crim. P. 2.10 (2022). As explained, Hightower's plea agreement did not include an agreed-upon sentence. Therefore, under either version of the rules, the district court had no obligation to offer Hightower an opportunity to withdraw her plea. *See, e.g.*, *State v. Weaver*, No. 05–0764, 2006 WL 3018498, at *3 (Iowa Ct. App. Oct. 25, 2006) (per curiam) (holding that the district court "was not required to allow Weaver an opportunity to withdraw his guilty plea" where plea agreement was not "conditioned upon the court's concurrence in any certain disposition").

"it is the defendant's burden to affirmatively demonstrate that the sentencing court relied on an improper factor." *State v. Canady*, 4 N.W.3d 661, 675 (Iowa 2024).

Here, the sentencing court repeatedly referred to Hightower's failure to make presentencing payments of victim restitution. Indeed, the record leaves no doubt that the court relied on Hightower's failure to pay restitution in making its sentencing determination. The only question, then, is whether this reliance was improper. We conclude it was. Prior to sentencing, Hightower hadn't been ordered to pay restitution. *See* Iowa Code § 910.2(1)(*a*) (requiring "the sentencing court" to "order" restitution). The court's reliance on Hightower's failure to satisfy a nonexistent order was erroneous. Accordingly, resentencing is required.

**D. Appeal Bond.** We turn next to Hightower's complaints about her appeal bond. Hightower raises two concerns. First, Hightower argues that the district court abused its discretion by setting Hightower's appeal bond at $17,000 cash only. Second, Hightower argues that the order setting bond included improper forfeiture requirements. We discuss these arguments separately.

1. *The amount.* We begin with Hightower's complaint about the amount of her bond. Before we can reach the merits, though, we first consider whether the issue is moot.

It is a "familiar principle of judicial restraint" that courts usually "do not decide cases when the underlying controversy is moot." *Belin v. Reynolds*, 989 N.W.2d 166, 171 (Iowa 2023) (quoting *Rhiner v. State*, 703 N.W.2d 174, 176 (Iowa 2005)). "The key in assessing whether an appeal is moot is determining whether the opinion would be of force or effect in the underlying controversy." *Id.* (quoting *State v. Avalos Valdez*, 934 N.W.2d 585, 589 (Iowa 2019)).

The State contends that Hightower's complaints about the amount of her appeal bond are moot. They are moot, the State argues, because the bond

requirement only mattered during the pendency of this appeal. Once we issue this opinion (and procedendo issues), the appeal will be complete, and the appeal bond requirement will be irrelevant. Therefore, the State argues, any opinion that we might express about the bond requirement will have no force or effect.

Hightower does not dispute these points. Hightower effectively concedes that the requirements set for her appeal bond ($17,000 cash only) are now moot. As Hightower notes, though, Iowa appellate courts have sometimes reviewed the requirements set for appeal bonds even though, as here, mootness was likely present. *See, e.g., State v. Kellogg,* 534 N.W.2d 431, 433 (Iowa 1995). Also, as Hightower notes, our court has recognized a "so-called public-importance exception" to the mootness doctrine. *Homan v. Branstad,* 864 N.W.2d 321, 330 (Iowa 2015); *see also Kirkwood Inst., Inc. v. Sand,* 6 N.W.3d 1, 9 (Iowa 2024) (citing *Belin,* 989 N.W.2d at 171) (discussing the exception). This means that we have discretion to decide a moot issue "where matters of public importance are presented and the problem is likely to recur." *Belin,* 989 N.W.2d at 171 (quoting *Homan,* 864 N.W.2d at 330); *see also Homan,* 864 N.W.2d at 330 (citing *Maghee v. State,* 773 N.W.2d 228, 234 (Iowa 2009)) (noting factors that our court considers when deciding whether to apply the exception).

But Hightower does not offer much explanation as to why we should exercise this discretion here. Most importantly, she does not explain why the requirements for her appeal bond are "matters of public importance." *Belin,* 989 N.W.2d at 171 (quoting *Homan,* 864 N.W.2d at 330). And Hightower's case is not like *State v. Briggs,* for example, in which the defendant raised constitutional questions about the validity of a widely used bail practice. 666 N.W.2d 573, 576–77 (Iowa 2003). In cases like that, an opinion by this court can be helpful "to guide public officials in their future conduct" when addressing "an issue of general applicability that is likely to reoccur." *Maghee,* 773 N.W.2d at 234–35

(quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002)). That is not the situation here, though. The public interest would not be greatly served by an opinion of this court as to whether the district court exceeded its considerable discretion by setting particular bond requirements ($17,000 cash only) in light of Hightower's unique individual circumstances (e.g., her prison sentence following her conviction of two felonies; her record of attendance at prior court proceedings; her ties to other states; her ties to the local community, including her children and employment; her prior criminal record, including the claimed expungement of certain prior offenses). So we decline to apply the public importance exception here. *Cf. Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 298–302 (Iowa 2022) (discussing the public-importance exception but declining to apply it). And so we decline to consider Hightower's now-moot complaints about the amount of her appeal bond.

2. *The forfeiture requirement.* We turn next to Hightower's argument that the district court erred by ordering these forfeiture requirements on her appeal bond:

> IT IS THEREFORE ORDERED appeal bond is set in the amount of $17,000 CASH ONLY. *All parties are advised any appeal bond posted, regardless of who posts it, SHALL be used to satisfy victim restitution. The Clerk of Court shall notify any person posting the appeal bond that it will not be returned, but rather will be used for victim restitution.*

(Emphasis added.)

We conclude that the district court erred by ordering these forfeiture requirements. Indeed, the State correctly concedes that these requirements were contrary to our decision in *State v. Letscher*, 888 N.W.2d 880, 886 (Iowa 2016). And so, as in *Letscher*, "we must return the case to the district court for the clerk to disburse the bail money as required by law." *Id.* (citing Iowa Code § 811.8(2) (2015)).

**V. Disposition.**

This opinion resolves both of Hightower's appeals. As to Hightower's appeal of her conviction and sentence: we affirm Hightower's conviction but we vacate Hightower's sentence. We remand for resentencing before another judge. As to Hightower's appeal of the order setting the appeal bond: we decline to review the terms ordered for Hightower's release during the pendency of this appeal. That issue is moot. But we reverse the district court's order for forfeiture of funds paid to secure Hightower's release. We remand for distribution of the funds as required by Iowa Code chapter 811.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Waterman, Mansfield, McDonald, and Oxley, JJ., join this opinion. McDermott, J., files a dissenting opinion, in which Christensen, C.J., joins.

**McDermott, Justice (dissenting).**

The majority rejects Hightower's request to withdraw her plea—a plea the majority acknowledges is defective—based on Iowa Code § 814.29 (2021), which prohibits courts from vacating defective pleas "unless the defendant demonstrates that the defendant more likely than not would not have pled guilty if the defect had not occurred." Because I believe Hightower met her burden under this statute, I respectfully dissent and would remand to allow her to withdraw the invalid plea.

"Due process," we have declared, "requires that a defendant enter a guilty plea voluntarily and intelligently." *State v. Kress*, 636 N.W.2d 12, 21 (Iowa 2001). Our rules of criminal procedure thus require a district court, before accepting a defendant's plea bargain, to establish that the defendant entered the guilty plea "voluntarily and intelligently." Iowa R. Crim. P. 2.8(2)(*b*). This means that "a defendant must be aware not only of the constitutional protections that he gives up by pleading guilty, but he must also be conscious of . . . the potential penalties." *State v. Loye*, 670 N.W.2d 141, 150–51 (Iowa 2003).

For most felony charges, when a defendant enters a guilty plea, we require judges to personally address the defendant in open court to establish that the defendant understands (among other things) the maximum potential punishment for the crime and that the judge is not bound by any party's recommendation about the sentence unless the plea is conditioned on the judge's approval of the parties' agreement. *See* Iowa R. Crim. P. 2.8(2)(*b*)(2); *id.* r. 2.10(3).

But an in-person colloquy between the judge and defendant is not required for certain class "D" felonies (the type of crimes charged in this case) so long as the same terms are memorialized in a written plea agreement that "[d]emonstrates the defendant has been *informed of and understands* the matters" that

the judge must otherwise establish in open court. *Id.* r. 2.8(4) (emphasis added). Even where a defendant has waived the in-court colloquy that's otherwise required, "allowing written waivers does not diminish the importance and necessity of the court's role to ensure each plea is voluntary, intelligent, and supported by the facts." *State v. Thacker*, 862 N.W.2d 402, 411 (Iowa 2015). The duty imposed on courts to ensure that defendants are informed of and understand the terms of a *written* plea places a premium on the clarity of the document. The written plea agreement that the district court accepted in this case was not only confusing but materially inaccurate, and resulted in the court laying down a sentence far harsher than the one that Hightower reasonably understood the court could impose.

When the district court sentenced Hightower to five years in prison, she immediately responded with shock that a sentence of imprisonment was even possible:

> Can I just have one day, please? I haven't even told my kids [(two daughters, ages four and five)] good-bye. I had no idea this was happening, Your Honor. I had no idea. I had none. I haven't even said good-bye to my kids. I have no -- like, I did not expect this. I was under the assumption I was getting a -- I was getting the five years with it suspended, so I did not come prepared to come to jail today.
>
> If I would have known that I was going to prison, I would have came prepared to go to prison today; but I had no idea. Like, my kids don't have anybody to pick them up or anything. I'm the sole provider for my children. So I need at least 24 hours to get my brother to fly here and pick up my children because I was not told about any of this. I was told that there was an agreement and that I was supposed to be getting five years suspended to five years probation.
>
> . . . .
>
> . . . My brother is in Utah. All I have to do is make a couple of phone calls so he can come pick them up, and I can sign over all the paperwork that I need to give him because I'm not -- I did not come prepared for this because I had no clue.

If I would have known, I would have came prepared, and my kids would have already been with somebody. But this was not what -- I was under the assumption of the agreement that I was signing when I signed my sentencing agreement. I signed it with the assumption that I was supposed to be getting five years suspended to five years probation. That's -- when I signed this with -- under the assumption that I was when I got this signed.

The next morning, Hightower's lawyer filed a motion requesting a hearing and to stay the sentencing order or set an appeal bond. Her lawyer's motion stated that "it was clear the defendant and the defense attorney had a different understanding of the plea." The motion identified two provisions in the plea agreement, paragraphs 8 and 10, that had caused Hightower to believe she could withdraw the plea if the district court imposed anything harsher than a suspended sentence. The district court denied the motion for a hearing and set a $17,000 cash-only appeal bond that, if paid, would be tapped to satisfy victim restitution. This appeal followed.

It requires little imagination to see how a defendant would be confused by the plea agreement in this case. In paragraph 9 of the plea agreement, the "terms" are stated as follows:

> State will follow [the presentence investigation report] or recommend suspended sentence, 5 years concurrent, Defendant may apply to transfer probation to different jurisdiction, and this matter includes charges known on all matters related to [the victim] an[d] restitution to be determined.

When the plea agreement was signed, the presentence investigation report had not yet been prepared. Hightower, we know, was pushing for a deferred judgment—a lighter sentencing option than a suspended sentence. Although paragraph 9's language is unclear about what would happen if the presentence investigation report recommended a *harsher* sentence than a suspended sentence, one could reasonably read this language to mean that the State was binding itself to a sentence *no harsher than* a suspended sentence. The discussion in the

second sentence about probation, which would accompany either a deferred judgment or a suspended sentence, further supports such a reading. As it turned out, the presentence investigation report ultimately recommended a suspended sentence, so no dispute ever materialized on this point.

Paragraph 8 of the plea agreement contains a key provision that describes the nature of the plea. Unfortunately, it suggests two plausible—yet completely divergent—readings. It provides:

> 8. x☐ This guilty plea is entered without any agreement with the State's attorney regarding the charge(s) against me or my sentence.
>
> ☐ This guilty plea is entered pursuant to Iowa Rule of Criminal Procedure 2.10 based upon an agreement with the State's attorney regarding the charges against me and/or my sentence. I understand the agreement is binding on the Court unless the Court specifically tells me otherwise. **Initials** ___S H___

The first option states that the guilty plea is made "without any agreement with the State's attorney regarding the charge(s) against me or my sentence." The second statement offers the contrary position, stating that the plea is entered under "Iowa Rule of Criminal Procedure 2.10 based upon an agreement with the State's attorney regarding the charges against me and/or my sentence" with the agreement "binding on the Court unless the Court specifically tells me otherwise." The first statement is marked with a preprinted "x." The second statement contains no "x" but is inscribed with Hightower's handwritten initials.

Which one controls? Reasonable arguments can be made for treating either option as operative. In any event, it's enough to say that a defendant in Hightower's situation reasonably may have understood the plea agreement exactly as Hightower claims she did—that the court was bound by the parties' agreement "regarding the charges against [her] and/or [her] sentence." Such an understanding is entirely consistent with Hightower's immediate, bewildered reaction at the sentencing hearing.

Paragraph 10 of the plea agreement suffers the same lack of clarity on a similarly important detail. It provides:

> 10. ☒I understand that the Court is not bound by the plea agreement and may sentence me up to the maximum sentence provided by law.
>
> ☐I understand that this is a Rule 2.10 plea agreement, which means that if the Court does not accept the plea agreement, I may withdraw my plea of guilty.
> Initials _SH_

This paragraph presents the same riddle of the prechecked box versus handwritten initials as paragraph 8. The first statement, marked with a preprinted "x," seeks to affirm an understanding that "the Court is not bound by the plea agreement and may sentence me up to the maximum sentence provided by law." The second statement, which Hightower personally marked with her initials, seeks to affirm the opposite: "that this is a Rule 2.10 plea agreement, which means that if the Court does not accept the plea agreement, I may withdraw my plea of guilty." Again, it's reasonable to think that either statement could be operative. Requiring initials next to a sentence could be interpreted as affirming the content of that sentence and thus that the sentence trumps an inconsistent sentence that doesn't require initialing.

There are other significant problems with the plea agreement, not all of which require cataloging here, but several merit further discussion. There is, of course, the defect in paragraph 11 that the majority correctly concludes failed to comply with our plea rules by stating that the maximum possible fine was "0" even though the maximum was actually $7,500 for each charge:

> 11. I know that the maximum sentence for each charge for which I am pleading guilty as provided by statute is confinement in the jail/prison for a period of not more than ____five years____ year(s) and fine(s) of not more than ___0___. Minimum fine(s) of ___~~1,000.00~~ 750___.
>
> ☐ I am requesting a deferred judgment and if granted a civil penalty of $___1,000.00___ will be assessed. Initials _SH_
>
> ☐ If I am pleading guilty to multiple charges, I understand the terms of confinement set forth above could run consecutively to one another. I also understand that the

terms of confinement set forth above could run consecutively to sentences in other cases, including cases for which I am on probation or parole. **Initials** S H

But paragraph 11 is noteworthy for at least two other reasons. Consider the first of the two statements preceded by boxes, which states: "I am requesting a deferred judgment and if granted a civil penalty of $1,000.00 will be assessed." Hightower was indisputably seeking a deferred judgment; the sentencing transcript includes discussion by both lawyers and the judge about it. Yet the box acknowledging that Hightower is seeking a deferred judgment is *not* checked. The statement is, however, initialed. This example again illustrates that, for Hightower, it may have been reasonable for her to conclude that a statement next to an *un*checked box could still be operative.

The second statement preceded by a box in paragraph 11 (about the possibility of consecutive sentences if the defendant is pleading guilty to multiple charges) is notable in a different way. Hightower was indeed pleading to two charges. If the district court had discretion to order any sentence available—and the district court at sentencing certainly claimed it did—then the district court could have imposed consecutive sentences. Yet the box next to this statement is unchecked.

Other preprinted provisions on the plea agreement contradict handwritten ones. Paragraph 23, for instance, states in all-caps typeface that "I PLEAD GUILTY AS SET OUT ABOVE." But above, in paragraph 7, these handwritten lines appear:

as "Alford Plea", court may rely on I.I. this is best interest.

I admit that my actions would satisfy each and every element set forth in paragraph 5 above. **Initials** S H

The handwritten lines state that Hightower is entering an *Alford* plea. An *Alford* plea does not admit guilt; indeed, it's a maneuver specifically designed to *avoid* admitting guilt. *State v. Chapman*, 944 N.W.2d 864, 872 (Iowa 2020) (citing *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)). An *Alford* plea admits only that the state's evidence is most likely sufficient to sustain a conviction. *Id.*

"[F]or the purposes of determining whether a guilty plea was involuntary due to confusion over the plea agreement, the important inquiry is what the defendant, not the defense attorney, understood." *State v. Philo*, 697 N.W.2d 481, 489 (Iowa 2005). Suffice it to say, on this record, I have no confidence that Hightower understood that she had agreed to accept a sentence of incarceration. Both the "intelligent" and "voluntary" conditions that we require of all plea agreements were absent. The majority discusses only one defect in the plea—the amount of the potential fine—but when it comes to defects, this plea contains multitudes. And these defects go to the very heart of the plea agreement.

The majority's analysis of Iowa Code § 814.29, and its focus on potential evidentiary problems with Hightower's statements at the sentencing hearing, strike me as needlessly technical. The majority states that "[n]othing in her comments suggested that she wanted to go to trial instead of pleading guilty," and indeed, that "[h]er comments did not touch on the notion of going to trial." The question that the majority finds Hightower failed to answer—whether she would have gone to trial—is *not* the question that the text of Iowa Code § 814.29 asks us to consider.

Iowa Code § 814.29 states that a plea may not be withdrawn "unless the defendant demonstrates that the defendant more likely than not would not have pled guilty if the defect had not occurred." The majority misapplies the "prejudice" prong of an ineffective-assistance-of-counsel claim. But this is not an ineffective assistance of counsel case. With ineffective-assistance-of-counsel claims,

we conduct a "but for" inquiry asking whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The prejudice standard for challenges to guilty pleas based on ineffective assistance of counsel requires a defendant to show that, but for her lawyer's errors, she "would have insisted on going to trial." *Sothman v. State*, 967 N.W.2d 512, 523 (Iowa 2021) (quoting *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021)).

But § 814.29 is *not* an ineffective assistance of counsel statute. It thus does *not* launch us into *Strickland*'s prejudice inquiry about whether Hightower would have gone to trial. The question § 814.29 asks is whether Hightower has shown she "more likely than not would not have *pled guilty* if the defect had not occurred." Iowa Code § 814.29 (emphasis added). The majority cites no authority that says defendants must prove they would have gone to trial under § 814.29. In manufacturing such a requirement, the majority grafts a prejudice requirement onto § 814.29 and rewrites the statutory text. We are to "apply the words 'of a statute as written,' " and "may not—under the guise of statutory construction—enlarge or otherwise change the terms of a statute as the legislature adopted it." *Bridgestone Ams., Inc. v. Anderson*, 4 N.W.3d 676, 685 (Iowa 2024).

I read the burden in § 814.29 as largely addressing proof about the materiality of the alleged defect in the defendant's decision to enter a plea. For instance, a misstatement about the maximum fine in a plea agreement, although failing to substantially comply with Iowa Rule of Criminal Procedure 2.8(2)(*b*), could conceivably be of minimal significance for some defendants in their decision to enter a plea. Conversely, defects in a plea agreement about whether the plea is contingent on the defendant serving no time in prison as opposed to up to ten years in prison (the situation here) is far easier to recognize as a material

consideration—indeed, almost certainly the dominant one—in a defendant's decision to enter a plea. Considering the nature of the defects in this plea agreement, and Hightower's bewilderment after having been sentenced to prison stated on the record ("I did not come prepared for this because I had no clue."), I have no trouble concluding that Hightower meets the burden that Iowa Code § 814.29 actually imposes.

Even if § 814.29 did impose a *Strickland* prejudice standard turning on whether Hightower would have gone to trial (and it does not), the record in this case offers ample evidence to meet that standard. We do not require parties to utter magic words to avail themselves of rights. Her repeated assertions that she "was supposed to be getting five years suspended to five years probation" and that she signed the agreement with this understanding permits a reasonable inference that she would *not* have pleaded guilty but for the defects in the plea agreement.

A review of the district court's docket suggests that Hightower wavered considerably about whether to go to trial or agree to a plea in this case. The State filed its complaint on April 1, 2020. Hightower pleaded not guilty, and the matter was set for trial. The trial was continued several times. In early February 2021, after at least two pretrial conferences, the district court set a plea hearing for later that month. That plea hearing was continued because the parties requested more time to work out a plea agreement. In May, still with no plea agreement, the district court reset the case for trial at Hightower's request. In early July, the court set another plea hearing for later that month. But in early August, the court entered an order stating that Hightower requested to return the matter to the jury trial docket once again, and the court set trial for August 24. The trial was continued to October, then November, then December. On December 21,

the court scheduled yet another plea hearing. Hightower signed the plea agreement in January 2022—after *three cycles* of the case being set for trial, then set for plea, in the span of twenty-one months. In short, this is not a defendant who showed no interest in taking her case to trial. What's more, Hightower went through the trouble of entering an *Alford* plea, not a guilty plea, in this case. That the State and Hightower consummated a plea bargain for an *Alford* plea suggests some measure of unwillingness to resolve the case by admitting guilt.

We need not doubt the reliability of Hightower's statements at the hearing. The prosecutor, after hearing Hightower's comments, said she had no objection when the district court asked for the State's input on Hightower's request to delay taking her into custody. And the district court, for its part, granted Hightower's request to delay taking her into custody and gave her until 6:00 p.m. the next day based on her statements at the hearing. The court did so despite stating that it "normally do[es] not withhold mittimus." Everyone involved, it would appear, had no trouble relying on the veracity of Hightower's statements.

The majority returns to this point in summarizing its conclusion: "In any event, based on the current record, we cannot say that the requirements of section 814.29 are satisfied." The majority holds that Hightower made an inadequate record because, in effect, it finds *no record*. Yet among the fundamental aspects of the right to due process is the right to be heard. *See Lennette v. State*, 975 N.W.2d 380, 396 (Iowa 2022) (noting that procedural due process "assure[s] . . . a right to a meaningful hearing when constitutionally protected interests are invaded or threatened"). I find no support for the majority's claim that "[a]s for opportunity to be heard, Hightower had multiple chances to make any record that she wanted to make." The majority recites four such "opportunities." The first two occurred before the district court even imposed the sentence and thus

before Hightower had any understanding that the court believed it could imprison her under the plea agreement. The third was immediately after the district court imposed the sentence, when Hightower made the comments on the record that the majority finds deficient. And the fourth, according to the majority, was when Hightower filed a motion the next morning asking for a hearing on her request to withdraw her plea. But the district court denied that motion, including, critically, her request for a hearing.

For Iowa Code § 814.29 to impose a burden of proof on Hightower without providing her an opportunity to present evidence to meet this burden is to deal her marked cards. When, exactly, was Hightower supposed to put on evidence to demonstrate that she would not have pleaded guilty but for the defects in her plea agreement? The majority acknowledges that the district court failed to inform her of her right to file a motion in arrest of judgment, where some defendants (if granted a hearing) might have an opportunity to present evidence. The evidentiary burden that the majority imposes, coupled with the district court's refusal to grant Hightower a hearing, left Hightower without an opportunity to make the record that the majority finds lacking.

"Duration of incarceration," we have declared "unquestionably goes to the very heart of voluntariness required for a valid waiver of a defendant's right to trial on the charge alleged, as well as the voluntariness of a defendant's waiver of the other rights to be accorded." *State v. White*, 587 N.W.2d 240, 246 (Iowa 1998) (en banc) (quoting *State v. Irish*, 394 N.W.2d 879, 884 (Neb. 1986) (Shanahan, J., dissenting) (per curiam)). Approval of Hightower's defective plea agreement, after all we've said in our rules and cases about the enduring requirement of voluntary and intelligent guilty pleas, makes our lofty pronouncements ring hollow. Iowa Code § 814.29 presents no obstacle to righting the wrong in this case. I would vacate the guilty plea and sentence and remand the case.

Christensen, C.J., joins this dissent.